## SUPREME COURT.

### JAMES LACKEY agt. CORNELIUS VANDERBILT.

A stipulation extending the time for defendant to answer, and to make such application as he should be advised, embraces a motion to strike out portions of the complaint.

The principal beneficial object in the passage of the Code was, to abolish the use of *fictitious allegations* in our written pleadings. And as there can be but one substantially true statement of a single cause of action, the practice of setting it forth in *different counts* is necessarily abolished.

An objection that the *causes of action* contained in different counts in the complaint *are one*, can be made to appear only upon *affidavit*, and can be available only *on motion*.

*King's Special Term, Nov.*, 1854.

This was a motion to compel the plaintiff to elect upon

which one of his first five counts or statements of causes of action in his complaint set forth he would rely; and to strike out the residue as irrelevant or redundant; or that the complaint be set aside as containing several counts on the same cause of action; or as not conformable to the 2d subdivision of the 142d section of the Code.

The *first* count of the complaint stated, " That at the time of the committing the several grievances hereinafter mentioned, and before and afterward, the defendant was and still is a common carrier, and was and is the owner of a certain line of vessels and conveyances used and employed in the transportation and carriage of passengers, baggage, and merchandise, from the port of New-York to the port of San Francisco, in California, by way of Nicaragua in Central America."

" That on or about the 5th of March, 1852, in the city and county of New-York, the said defendant being such owner and proprietor as aforesaid, and being such common carrier, received the plaintiff on board of one of the vessels of said line as a passenger, to be by said defendant transported and conveyed from the said city of New-York to San Francisco aforesaid, by the way of Nicaragua, as aforesaid, for certain valuable hire and reward to the said defendant in that behalf; that it then and there became the duty of the said defendant, as the owner and proprietor of said line of vessels and as such common carrier, to carefully convey and transport the said plaintiff from the said port of New-York to San Francisco, by the way of Nicaragua, as soon as he should reasonably be able so to do, without any voluntary and unnecessary delay, detention, or hinderance thereof; and to have furnished the plaintiff, during said voyage or voyages on said vessels of the defendant, with safe and comfortable berth, bed, and bedding, and with good and sufficient food—to have provided sufficient room and space on said vessel, and not to have overcrowded the same. That the defendant, not regarding his duty in that behalf, did not carefully and without unnecessary delay and detention, transport and convey the plaintiff from the port of New-York to San Francisco aforesaid, and did not furnish the plaintiff on

Lackey agt. Vanderbilt.

said voyage with safe and comfortable berth, bed, and bedding, and with good and sufficient food, and did not provide him with sufficient room and space on said vessel; but on the contrary thereof, unnnecessarily and wrongfully delayed and detained the said plaintiff at various places on the said voyage for a long time, that is to say, for the space of fifty days·or thereabouts, and wholly neglected and refused to carry the said plaintiff to said port of San Francisco, as it was his duty to do as aforesaid, and wholly omitted, neglected, and refused to furnish the plaintiff on said voyage or voyages with good and wholesome food, or with any sufficient food, or with any comfortable or tenantable berth, bed, or bedding, and overcrowded said vessel, and thereby deprived the plaintiff of sufficient and comfortable room and space thereon, whereby the said plaintiff lost great gains and profits that he otherwise would have made, and was compelled to and did expend, during said delays and detentions, large sums of money for his necessary support, and was made sick and debilitated, and injured in his bodily health, and was subjected to other great inconveniences and losses, and was otherwise greatly damnified, that is to say, in the sum of ten thousand dollars."

The *second* count stated, in part, as follows: "And the complaint of the plaintiff *secondly*, and for a further separate and distinct cause of action, showeth, that the said defendant, at the time of committing the grievances hereinafter mentioned, and before and afterward, was a common carrier, and was the owner and proprietor of a certain line of vessels used and employed by him, said defendant, for the transportation and carriage of passengers, baggage, and merchandise from the port of New-York to the port of *San Juan de Nicaragua* in Central America, and from said port of San Juan de Nicaragua to New-York aforesaid. That on or about the 5th of March, 1852, in the city and county of New-York," &c., alleging and claiming substantially, as in the first count.

The *third* count commenced like the second, and substantially differed therefrom, only, in the allegation that the defendant was owner and proprietor of a certain line of vessels, used and employed by him for transportation of passengers, &c.,

from the port of *San Juan del Sur*, in Central America, to *San Francisco*, in California, and from San Francisco to said port of San Juan del Sur. That the defendant received the plaintiff on board of a certain vessel running in connection with the aforesaid line of vessels of said defendant, to be by him, said defendant, transported and conveyed from said port of *San Juan del Sur to San Francisco*," &c.

The *fourth* count commenced like the second and third, and alleged that the defendant being the proprietor of such vessel, and being such common carrier, *falsely* and *fraudulently* represented to plaintiff and others that the said vessels of said defendant on said voyages would convey the plaintiff and the other passengers thereon directly to San Francisco as aforesaid, and that they should not be delayed on the Isthmus of Nicaragua longer than the space of fifteen days, &c. Yet the defendant not regarding, &c., caused the plaintiff to be delayed and detained unnecessarily and wrongfully at San Juan del Sur for the space of fifty days, &c.

The *fifth* count was substantially like the fourth. And the *sixth* and last count, was for the value of the baggage of plaintiff, alleged to have been lost by the careless and negligent management of the vessels of defendant; and demanded judgment for $10,500 besides costs.

The complaint was served on the 7th of February, 1854. The time for the defendant to answer, or make such application as he might be advised, was by stipulation of the plaintiff's attorney, extended from time to time until the 19th of July, 1854. On the last mentioned day the defendant's attorney upon his affidavit showing, that the defendant was unable from ill health to attend to his ordinary business, and was then absent on account of his health, that the first five counts in the plaintiff's complaint were based upon and referred to one and the same transactions, and were but different modes of stating the same, and giving notice of a motion that the plaintiff elect on which one of the first five counts he would rely, and striking out all the others, &c., procured an order from Mr. Justice CLERKE, as follows: (Title of the cause,) "On the annexed

affidavit of Charles A. Rapallo, let the time of the defendant to answer in this action be extended until the making and decision of the motion mentioned in the notice of motion hereto annexed. Dated New-York, July 19, 1854." A copy order and notice of said motion and affidavits were served on the plaintiff's attorney on the said 19th July. The plaintiff's counsel objected, that the motion was too late; that the extension of the time to answer or to make such application, as defendant might be advised, did not operate as leave to make the motion.

> HORACE F. CLARK, *for defendant.*
> PETER Y. CUTLER, *for plaintiff.*

S. B. STRONG, Justice. It appears from the affidavit of the plaintiff's counsel and a stipulation annexed to it, that the time for the defendant to answer the complaint, *and to make such application as he should be advised,* was extended to the 19th July last. Notice of the motion to correct the complaint was served on that day. That motion was embraced in the terms of the stipulation, and was therefore in season equally as if the original period for answering had terminated on the same day. The order of Judge CLERKE, extending the time to answer, was made on the same day, and was, at all events, valid until the first Tuesday of August. It appears from a memorandum on the defendant's papers, and indeed it seemed to be admitted by the plaintiffs counsel on the argument, that on the 31st of July a mutual arrangement was made that the motion mentioned in the defendant's notice should be adjourned until the special term, when it was heard. Under these circumstances I am satisfied that it was the intention of both parties to save to the defendant the right to make the motion which I have indicated at the term when it was argued. There can be no doubt, at any rate, that the defendant's counsel thought that his present motion was included in the terms used in the stipulation; and if there had been reason to suppose that he had misinterpreted it, I should be inclined to relax the rule, which it is competent for the court to do in all cases except where the time is specifically fixed by statute.

The motion is, to require the plaintiff to strike out four of the first five counts in the complaint, on the ground that the five are for the same identical cause of action, and no other; and that, therefore, four of those counts must be redundant. The defendant's attorney swears in the affidavit annexed to his notice, "that he has defended several similar actions which were instituted by the plaintiff's attorney, and which have been tried; and that from his general acquaintance with the nature of those actions and the investigations he had made as to the circumstances thereof, and from the general character of the testimony given on the trial of such actions, he believes that the first five counts are based upon, and refer to, one and the same transaction, and are but different modes of stating the same;" and he further states as a reason why the affidavit had not been made by the defendant, that he is unable to attend to his ordinary business on account of ill health, and is absent from the city. What is said as to the identity of the subject matter of the first five counts, is stated from inference and belief, but in the absence of any denial or counter-statement by, or in behalf of the plaintiff, the inference must be deemed to be correct and the belief well founded. The affidavit in support of the motion is not very explicit as to the identity of the causes of action specified in the different counts. It merely states that they are based upon, and refer to one and the same transaction. The Code (§ 167) indicates, and no doubt truly, that several causes of action may arise out of one transaction. The affidavit does not go far enough. But the notice states that the motion would be founded upon that *and the complaint.* On examining that pleading, I am satisfied that the causes of action in the second, third, fourth and fifth counts are embraced in the first count; and my impression, if it needed any support, would be fortified by the admission contained in the elaborate points submitted to me by the ingenious counsel for the plaintiff. That learned counsel argued very ably, in favor of his main position, that it is competent for the plaintiff now, as it was before the passage of the Code, to set forth the same cause of action in distinct counts, varying the

allegations so as to meet the proof which was deemed essential in a complicated transaction. The requisition of the Code in this respect is, (§ 142,) that the complaint must contain a plain and concise statement of the facts constituting a cause of action. A "fact" is defined to be "a thing done, *reality, not supposition,* action, deed." (*Walker's Dictionary.*) All of these definitions call, and some of them emphatically, for the *truth.* The first edition of the Code contained the same requisition, that the complaint should set forth a statement of the facts constituting the cause of action; and it also required that it should be verified, (*Code of* 1848, §§ 120 *and* 133;) of course that statute called for a true statement; and the same phraseology used in a subsequent statute must have the same interpretation. Indeed the principal, and I am constrained to say, almost, if not the only beneficial object of the legislature in adopting the new Code of Procedure, was to abolish the use of fictitious allegations in our written pleadings, which had a tendency to mislead the parties, and embarrass those to whom the administration of the law was confided. Now, as there can be but one substantially true statement of a single cause of action, the practice of setting it forth in different counts is necessarily abolished. A merely formal variation is unnecessary, while a substantial one would involve a contradiction, and one must be false. The pleader, who drew the complaint in this action, in effect recognized the new rule, as each count after the first commences with an allegation that it is for a *further, separate, and distinct cause of action.* That too furnishes an answer to the point taken by the plaintiff's counsel, that the objection to the multiplicity of the counts should have been taken, and could only be available by demurrer. A demurrer admits the allegations contained in the pleading to which it is interposed, and would, of course, in this case, admit that each count is for a separate and distinct cause of action. The objection that the causes of action are one, can be made to appear only upon an affidavit, and can be available only on motion.

The former practice of allowing a plaintiff to set forth the same cause of action in different ways in several counts so as

to meet the proof was, undoubtedly, advantageous to the plaintiff. But it often seriously embarrassed the defendant in the preparation of his pleadings to meet, he knew not what, and in procuring his evidence; and sometimes subjected him to great injustice in having a suppositious claim established against him. The benefit to one was more than balanced by the evil to the other party. The old rule was, and was probably designed to be, the most favorable to the plaintiff, while the new rule does equal justice to both parties. The plaintiff generally does, or at least should understand his own case. If he states it truly, he can prove it, if at all, as he sets it forth, should his witnesses testify truly; and if he can support it only by evidence varying from the truth, he ought to fail. I refer only to variations in substance. Differences as to inconsequent matters should not obstruct or prevent a recovery. An adequate remedy exists in the liberal powers conferred upon our courts to allow pleadings to be amended so as to conform to the proof.

The 2d, 3d, 4th, and 5th counts must be struck out of the complaint, unless the plaintiff shall elect within twenty days to retain one of them in lieu of the first count, which must in that event be struck out; and the plaintiff must be at liberty within the same time to amend the count retained by him, should he elect to retain either of his counts, or, should he prefer it, to substitute a single new count in the place of his first five counts. The defendant must have the same time after service of the amended complaint to answer it; and the plaintiff must pay ten dollars costs of the motion.